UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNARCO MATERIAL HANDLING, INC.,<br><br>         Plaintiff,<br><br>    -against-<br><br>KINGWAY INCA CLYMER HOLDINGS, INC. and AMERICAN CAPITAL STRATEGIES, Ltd.,<br><br>         Defendants. | **Filed Electronically**<br><br>08 CV 2394 (VM)<br><br>**REPLY TO**<br>**COUNTERCLAIMS** |

    Plaintiff Unarco Material Handling, Inc. ("Unarco"), by it attorneys, for its Reply to the Counterclaims of Defendants Kingway Inca Clymer Holdings, Inc. ("Kingway" or "Seller") and American Capital Strategies, Ltd. ("American Capital"), responds as follows:

## REPLY

    1.  Unarco admits the allegations set forth in Paragraph 1 of the Counterclaims.

    2.  Unarco denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Counterclaims.

    3.  The allegations set forth in Paragraph 3 of the Counterclaims are conclusions of law to which no response is required.

    4.  The allegations set forth in Paragraph 4 of the Counterclaims are conclusions of law to which no response is required, except Unarco admits that there is diversity of citizenship and that the amount in controversy exceeds the sum of $75,000.

    5.  The allegations set forth in Paragraph 5 of the Counterclaims are conclusions of law to which no response is required, except Unarco admits that, pursuant to

Section 12.07 of the Securities Purchase Agreement, dated March 9, 2007 (the "Agreement"), the parties submitted to the jurisdiction of this Court.

6. Unarco admits the allegations set forth in Paragraph 6 of the Counterclaims.

7. Unarco admits the allegations set forth in Paragraph 7 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

8. Unarco admits the allegations set forth in Paragraph 8 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

9. Unarco admits that Defendants have accurately quoted from Section 3.06(a)(ii) of the Agreement in paragraph 9 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

10. Unarco admits that Defendants have accurately quoted from Section 3.06(f) of the Agreement in Paragraph 10 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

11. Unarco admits that Defendants have accurately quoted from Section 3.09(b) of the Agreement in Paragraph 11 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

12. Unarco admits the first sentence of Paragraph 12 and that, in the second sentence, Defendants have accurately quoted from Section 11.03 of the Agreement. Unarco denies the allegations in the third sentence of Paragraph 12 and alleges that although the failure of Defendants to record (or properly record) certain liabilities on the closing balance sheet and, accordingly, in the calculation of Net Working Capital, may give rise to a claim for breach of

representations and warranties, the agreement provides that a dispute over whether or not those liabilities should have been included on the closing balance sheet and, therefore, in the calculation of Net Working Capital (for the purposes of determining the Actual Purchase Price) is to be resolved pursuant to the post-closing adjustment process set forth in Section 2.04 of the Agreement.

13. Unarco admits that Defendants have accurately quoted from Sections 11.02(a) and 11.03(a) of the Agreement in Paragraph 13 of the Counterclaims, and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

14. Unarco admits the allegations set forth in Paragraph 14 of the Counterclaims and respectfully refers the Court to the Agreement for a complete and accurate recitation of its terms.

15. Unarco denies the allegations set forth in Paragraph 15 of the Counterclaims, except admits that the post-closing adjustment provides a mechanism for the parties to adjust the purchase price paid by Unarco from "estimated" to "actual." Unarco further alleges that Defendants' arguments regarding the purpose, scope and design of the post-closing adjustment process are unsupported by the plain and unambiguous language of Section 2.04 of the Agreement. Section 2.04 does not limit the scope of the post-closing adjustment process as alleged by Defendants. Section 2.04 contains no language excluding claims for purchase price adjustments to reflect an unrecorded liability where the failure to record (or properly record) that liability also amounts to a breach of representations and warranties; nor is there language prohibiting a Buyer from making a claim for a purchase price adjustment based upon the fact that Seller's historical accounting methods do not comply with GAAP.

16. Unarco admits that Defendants have accurately quoted from Section 2.04 of the Agreement in Paragraph 16 of the Counterclaims, but otherwise denies the allegations set

forth in Paragraph 16 of the Counterclaims. Unarco further states that, as set forth in paragraph 15 above, Defendants' allegations regarding the "scope of authority" given to the Firm by the Agreement are not supported by the plain and unambiguous language of Section 2.04 of the Agreement.

17. Unarco admits the allegations set forth in Paragraph 17 of the Counterclaims.

18. Unarco denies the allegations set forth in Paragraph 18 of the Counterclaims and alleges that Defendant Kingway argued to PwC that certain of Unarco's claims should be denied because they fell outside the scope of Section 2.04 of the Agreement. Defendant Kingway never objected that PricewaterhouseCoopers LLP ("PwC") lacked authority to determine whether Unarco's claims fell outside the scope of Section 2.04 of the Agreement. Defendant Kingway admitted that PwC had such authority when it expressly requested that PwC rule on the scope of Section 2.04. In its initial Statement of Position, Defendant Kingway argued that:

> The post-closing adjustment process is not an indemnification action, and it is not an arbitration proceeding. .... It was never designed to be an investigation of "big" issues such as the claims that Buyer is making regarding the Company's prior accounting practices and the represented-to financial statements. ***Buyer's proposed adjustments should be rejected*** – in this context – because they do not reflect "true ups" to the Estimated Purchase Price, but instead reflect fundamental attacks on the Company's prior accounting practices. .... ***Buyer should not be permitted to seek recovery directly from Seller in the streamlined post-closing adjustment process for claims that are really indemnification claims.*** The Firm is simply not in a position to pass on those issues. The Firm should resist Buyer's invitation to act as a trial court for its indemnification claims.

Seller's Statement of Position at p. 7 (emphasis added); *see also*, Seller's Reply Statement of Position at p. 2.[1]

19.     Unarco admits the allegations set forth in Paragraph 19 of the Counterclaims except denies the allegations set forth in the last sentence of Paragraph 19 of the Counterclaims and alleges that, according to the PwC Decision, Defendant Kingway did not previously estimate its sales tax liabilities in accordance with GAAP.

20.     Unarco denies the allegations set forth in Paragraph 20 of the Counterclaims and states that, although Defendant Kingway's omission of accrued sales tax liabilities from the closing balance sheet may give rise to a claim for breach of the representations and warranties in Sections 3.06 and 3.09 of the Agreement, the Agreement provides that a dispute over whether or not accrued sales tax liabilities should have been included in the closing balance sheet and, therefore, in the calculation of Net Working Capital, is to be resolved pursuant to Section 2.04 of the Agreement.

21.     Unarco admits that it claimed that Kingway should have included a liability of $343,639 for prepaid vacation on its closing balance sheet; the remainder of the allegations set forth in Paragraph 21 constitute legal argument to which no response is required and Unarco refers the Court to the parties submissions to PwC for a complete and accurate recitation of their respective positions. *See* Neal Decl. Exs. 5 - 13. Unarco further alleges that the Agreement specifically provides that Net Working Capital is to be determined "in accordance with the methods used in the preparation of the Reference Balance Sheet ***and GAAP***."

---

[1] Copies are attached as Exhibits 6 and 10, respectively, to the Declaration of Paul Neal in Support of Plaintiff's Motion To Confirm A Final Arbitration Award ("Neal Decl."). All of the submissions made to PwC by the parties are attached as Exhibits 5-13 to the Neal Decl. To avoid burdening the docket with multiple copies of voluminous exhibits, copies are not attached to this document. Accordingly, the documents attached to the Neal Declaration are incorporated herein by reference.

Agreement, Exhibit A (Neal Decl. Ex. 1) (emphasis added).  As determined by PwC, Defendant Kingway's historical accounting policy for accrued vacation did not comply with GAAP and, as a result, PwC determined that Unarco was entitled to a purchase price adjustment to record the liability for accrued vacation as calculated according to GAAP compliant accounting policies.

22. Unarco denies the allegations set forth in Paragraph 22 of the Counterclaims and alleges that although Defendant Kingway's failure to properly record a liability for accrued vacation in accordance with GAAP may give rise to a claim for breach of the representations and warranties in Section 3.09 of the Agreement, the Agreement provides that a dispute over whether or not a liability should have been recorded, or was accurately recorded, in the closing balance sheet and, therefore, included in the calculation of Net Working Capital, is to be resolved pursuant to Section 2.04 of the Agreement.

23. Unarco denies the allegations set forth in Paragraph 23 of the Counterclaims and alleges that although Defendant Kingway argued to PwC that certain of Unarco's claims should be denied because they fell outside the scope of Section 2.04 of the Agreement, Defendant Kingway never objected to PwC's authority to determine whether those claims fell outside the scope of Section 2.04 of the Agreement.  Defendant Kingway specifically requested that PwC rule on the scope of Section 2.04.  *See* ¶ 18.

24. Unarco denies the allegations set forth in Paragraph 24 of the Counterclaims, except admits that on February 12, 2008, PwC issued a report entitled "Decision of PwC" (the "PwC Decision") in which it set forth its conclusions regarding, *inter alia*, the Actual Purchase Price.  Unarco further alleges that PwC did address Defendant Kingway's position that the so-called "Representations and Warranties Claims" were outside the scope of its authority pursuant to the Agreement's post-closing adjustment mechanism.  As alleged by Defendants, "PwC reached conclusions on the [so-called] Representations and Warranties

Claims," and, in doing so, it necessarily determined that those claims were within the scope of the post-closing adjustment process set forth in Section 2.04 of the Agreement.

25. Unarco admits that on March 7, 2008 it filed a complaint against Defendants for breach of contract in which it claimed that the Defendants breached the Agreement by failing to comply with the "conclusive and binding" decision of PwC.

## FIRST COUNTERCLAIM
### (Declaratory Judgment)

26. Unarco repeats and realleges each and every answer to the allegations set forth in Paragraphs 1-25 as if fully set forth herein.

27. Unarco denies the allegations set forth in Paragraph 27 of the Counterclaims on the basis that the alleged controversy, whether the so-called "Representations and Warranties Claims" are within the scope of Section 2.04 of the Agreement, has been finally and conclusively resolved by PwC. According to Section 2.04 of the Agreement, the PwC Decision is "conclusive and binding" on Plaintiff and Defendants, and thus there is no longer an actual case or controversy.

28. The allegations set forth in Paragraph 28 of the Counterclaims are conclusions of law to which no response is required.

29. Unarco denies the allegations set forth in Paragraph 29 of the Counterclaims and alleges that although Defendant Kingway's omission of liabilities from the closing balance sheet may give rise to claims for breach of the representations and warranties, the Agreement provides that disputes over whether or not a liability should have been recorded, or was accurately recorded, in the closing balance sheet and, therefore, included in the calculation of Net Working Capital, is to be resolved pursuant to Section 2.04 of the Agreement.

30. Unarco denies the allegations set forth in Paragraph 30 of the Counterclaims.

31. The allegations set forth in Paragraph 31 do not require a response.

32. The allegations set forth in Paragraph 32 do not require a response.

## SECOND COUNTERCLAIM
### (PwC's Costs and Expenses)

33. Unarco repeats and realleges each and every answer to the allegations set forth in Paragraphs 1-32 as if fully set forth herein.

34. Unarco denies the allegations set forth in Paragraph 34 of the Counterclaims and alleges that PwC specifically determined that Unarco's calculation of the Actual Purchase Price was closest to PwC's calculation of the Actual Purchase price and, in accordance with Section 2.04 of the Agreement, directed that Defendant Kingway reimburse Unarco for its share of PwC's costs and expenses.

35. Unarco admits the allegations set forth in Paragraph 35 of the Counterclaims.

36. Unarco denies the allegations set forth in Paragraph 36 of the Counterclaims and states that PwC specifically determined that Unarco's calculation of the Actual Purchase Price was closest to PwC's calculation of the Actual Purchase price and, in accordance with Section 2.04 of the Agreement, directed that Defendant Kingway reimburse Unarco for its share of PwC's costs and expenses. Subsequent to the issuance of the PwC Decision, Defendant Kingway wrote to PwC arguing that PwC's finding in that regard was in error and requested that PwC reconsider its finding on this issue. By email dated February 26, 2008, PwC denied Defendant Kingway's request.

**FIRST AFFIRMATIVE DEFENSE**

Defendants have failed to state a claim upon which relief can be granted because there is no actual case or controversy. The alleged controversy, whether the so-called "Representations and Warranties Claims" are within the scope of Section 2.04 of the Agreement, has been finally and conclusively resolved by PwC. Because, according to Section 2.04 of the Agreement, the PwC Decision is "conclusive and binding" on Plaintiff and Defendants, there is no longer an actual case or controversy.

**SECOND AFFIRMATIVE DEFENSE**

Defendants' Counterclaims are barred under the doctrines of collateral estoppel and res judicata. PwC necessarily determined that the so-called "Representations and Warranties Claims," were within the scope of Section 2.04 of the Agreement. Defendant Kingway had a full and fair opportunity to litigate that issue, and did litigate that issue before PwC. Defendants are not entitled to relitigate that issue before this Court.

**THIRD AFFIRMATIVE DEFENSE**

Defendants waived their right to claim in this Court that the Sales Tax Claim and the Vacation Accrual Claim are not within the scope of Section 2.04 of the Agreement. Defendants expressly submitted that issue to PwC for resolution. Although Defendants argued to PwC that Sales Tax Claim and the Vacation Accrual Claim should be denied because they were outside the scope of Section 2.04 of the Agreement, Defendants never argued that PwC should not, could not or did not have authority to determine whether those claims were within the scope

of Section 2.04 of the Agreement. To the contrary, Defendants expressly asked PwC to decide that issue.

To the extent that Defendants believed that PwC did not have authority to decide whether those claims were within the scope of Section 2.04 of the Agreement, they were obligated to seek a stay of the proceeding and assert their claim for declaratory relief prior to commencement of the proceeding before PwC.

### FOURTH AFFIRMATIVE DEFENSE

To the extent that Defendants' counterclaim for declaratory relief constitutes or can be construed as a defense to a motion to enforce the PwC Decision pursuant to the Federal Arbitration Act or Article 75 or 76 of the New York Civil Practice Law and Rules (including a cross-motion to vacate or modify), including, but not limited to, on the basis that PwC exceeded the scope of its authority, such defense has been waived for the same reasons set forth in Plaintiff's Third Affirmative Defense.

### FIFTH AFFIRMATIVE DEFENSE

If Plaintiff's motion to confirm the PwC Decision is granted, Defendants' counterclaims must be denied.

**RELIEF DEMANDED**

WHEREFORE, Unarco respectfully requests the dismissal of Defendants' Counterclaims, together with the costs and disbursements of this proceeding and such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         May 14, 2008

**CADWALADER, WICKERSHAM & TAFT LLP**


By:_____/s/ Howard R. Hawkins, Jr._____
         Howard R. Hawkins, Jr. (HH-2787)
         Joshua R. Weiss (JW-9959)

One World Financial Center
New York, New York 10281
212.504.6000 (t)
212.504.6666 (f)
hhawkins@cwt.com
jweiss@cwt.com


*Attorneys for Plaintiff*
*Unarco Material Handling, Inc.*