UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNARCO MATERIAL HANDLING, INC., <br><br>                      Plaintiff, <br><br>         -against- <br><br> KINGWAY INCA CLYMER HOLDINGS, INC. and AMERICAN CAPITAL STRATEGIES, Ltd., <br><br>                     Defendants. | **Filed Electronically** <br><br> 08 CV 2394 (VM) <br><br> **DECLARATION OF PAUL NEAL IN SUPPORT OF PLAINTIFF'S MOTION TO CONFIRM A FINAL ARBITRATION AWARD** |

Pursuant to 28 U.S.C. § 1746, Paul Neal declares:

1. I am a Vice President and the Chief Financial Officer of Plaintiff, Unarco Material Handling, Inc. ("Unarco"). I make this declaration in support of Unarco's Motion to Confirm a final arbitration award pursuant to sections 9 and 6 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and Sections 7601 and 7510 of the New York Civil Practice Law and Rules.

2. Pursuant to a Stock Purchase Agreement, dated March 9, 2007 (the "Agreement") (a true and correct copy of which is attached as Exhibit 1), Unarco purchased from Defendant Kingway Inca Clymer Holdings, Inc. ("Kingway") all the outstanding equity interests in KIC Holdings, Inc. (the "Company"). Defendant American Capital Strategies, Ltd. ("American Capital") guaranteed certain of Defendant Kingway's obligations under the Agreement.

3. Pursuant to Section 2.03 of the Agreement, at the closing, Unarco was obligated to pay Kingway the "Estimated Purchase Price" less an agreed upon "Escrow Amount." The Estimated Purchase Price was determined pursuant to a formula set forth in Section 2.01 of the Agreement. The purchase price paid at closing was termed "estimated,"

because it was based upon the Company's financial data as of the closing date, which the parties understood might not be accurate in all respects based upon subsequent information or investigation.

4.    Section 2.04 of the Agreement, entitled "Post-Closing Adjustment," provides a mechanism for the parties to adjust the purchase price paid by Unarco from "estimated" to "actual."  Specifically, the Post-Closing Adjustment mechanism provides that within sixty days of the closing date Unarco will provide Kingway with a "Draft Computation" setting forth its calculation of, among other things, the "Net Working Capital Amount" and based, in part on that amount, its calculation of the "Actual Purchase Price."

5.    The Agreement provides that if Kingway disagreed with the Draft Computation then it was obligated, within forty-five days of receiving it, to provide Unarco with an "Objection Notice," setting forth, among other things, its competing calculations of the Net Working Capital Amount and the Actual Purchase Price.

6.    Thereafter, the Buyer and Seller are to "use reasonable efforts to resolve any disagreements as to the Draft Computation and Objection Notice."  The Agreement further provides that if the parties are unable to resolve any "disagreements" between the Draft Computation and the Objection Notice, within sixty days, they are obligated to jointly retain an accounting firm to resolve those disagreements (the "Firm").  According to Section 2.04, the Firm's determinations with respect to those disagreements are "conclusive and binding upon the Buyer and the Seller."

7.    The closing took place on March 30, 2007.  On May 24, 2007, Unarco provided Kingway with its Draft Computation.  A true and correct copy of the Draft Computation is attached as Exhibit 2.  On July 9, 2007, Kingway provided Unarco with its Objection Notice.  A true and correct copy of the Objection Notice is attached as Exhibit 3.

8.     In the Draft Computation Unarco included in its calculation of Net Working Capital – which is the difference between current assets and current liabilities – certain liabilities of the Company for sales tax and accrued employee vacation, among others, that had not been included in the closing balance sheet or, therefore, in the calculation of Estimated Net Working Capital (upon which the calculation of the Estimated Purchase Price was based).

9.     In the Objection Notice Defendant Kingway omitted these liabilities from its calculation of Net Working Capital.  Accordingly, the Draft Computation and the Objection Notice disagreed over the calculation of Net Working Capital.

10.     The parties were unable to resolve this "disagreement." Accordingly, pursuant to Section 2.04 of the Agreement, by engagement letter dated October 5, 2007, the parties jointly retained PricewaterhouseCoopers LLP ("PwC") to resolve their disagreement.  A true and correct copy of the engagement letter is attached as Exhibit 4.  The parties agreed upon a schedule of submissions and, pursuant to that schedule, each made submissions to PwC, consisting of evidence, argument, and expert reports.[1]

11.     In a decision dated February 12, 2008 (the "PwC Decision") (a true and correct copy of which is attached as Exhibit 14), PwC determined that (i) the Actual Purchase Price was $2,808,691 and the Estimated Purchase Price was $5,571,379; and (ii) "the Buyer's calculation of the Actual Purchase Price was closest to the final calculation and therefore Seller

---

[1]   True and correct copies of the submissions are attached as follows: Buyer's Statement of Position (Exhibit 5); Seller's Statement of Position (Exhibit 6); Expert Report of Bruce H. Davis (on behalf of Seller) (Exhibit 7); Buyer's Supplemental Statement of Position (Exhibit 8); Expert Report of Dr. Will Yancey (on behalf of Buyer) (Exhibit 9); Seller's Reply Statement of Position (Exhibit 10); Buyer's Responses to PwC's Questions and Document Requests (Exhibit 11); Seller's Reponses to PwC's Questions and Document Requests (Exhibit 12); and Buyer's Supplemental Reply Submission (Exhibit 13).  Because the exhibits to these documents are voluminous, they have not been included.

is responsible for reimbursing the Buyer for fees and expenses paid to PwC in connection with

this matter."

12.    Section 2.04(b)(ii) of the Agreement provides:

[i]f the Actual Purchase Price is less than the Estimated Purchase Price, then within five (5) Business Days after the final determination of the Actual Purchase Price, the Seller shall pay to the Buyer, by wire transfer or delivery of other immediately available funds, an amount equal to such difference plus simple interest thereon, at an interest rate equal to 8%, from the Closing Date to the date of payment, computed on an annual basis using a 360-day year.

13.    Section 2.04(a) of the SPA provides:

when the Firm makes its determination, any costs and expenses (including costs and expenses previously advanced) of the Firm that are allocable to the party whose determination of the Actual Purchase Price ... was closest to the Firm's determination of the same shall be paid or reimbursed by the other party.

14.    Thus, according to the PwC Decision, Kingway is obligated to pay Unarco

**$2,941,374**, plus interest at 8% from the closing date to the date of payment.  This amount is

calculated as follows:

- Estimated Purchase Price:        $5,571,379
  Actual Purchase Price:          -$2,808,691
                                     $2,762,688

- PwC's fees and expenses
  Paid to by Unarco              +$178,686
                               **$2,941,374**

15.    By letter dated February 19, 2008, Defendant Kingway wrote to PwC

requesting that it reconsider its determination that Defendant Kingway should reimburse Unarco

for its share of PwC's fees and expenses.  By letter dated February 20, 2008, Unarco opposed

that request.    By letter dated February 26, 2008, PwC denied Kingway's request for

reconsideration (true and correct copies of the letters are attached as Exhibit 15).

16.    Kingway has not paid Unarco the amounts it is obligated to pay under the PwC Decision and Section 2.04 of the Agreement.

17.    Pursuant to Section 12.12 of the Agreement, American Capital unconditionally guaranteed Kingway's obligations under Section 2.04 of the Agreement. American Capital has not paid Unarco the amount owed by Kingway.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 14, 2008 in Orange Beach, Alabama.

_____
Paul Neal