UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNARCO MATERIAL HANDLING, INC.,

                              Plaintiff,

          -against-

KINGWAY INCA CLYMER HOLDINGS, INC. and
AMERICAN CAPITAL STRATEGIES, Ltd.,

                              Defendant.

**Filed Electronically**

08 CV 2394 (VM)(THK)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION TO CONFIRM A FINAL ARBITRATION AWARD**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
212.504.6000(t)
212.504.6666(f)

Attorneys for Plaintiff
*Unarco Material Handling, Inc.*

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

FACTS .................................................................................................................................3

ARGUMENT .......................................................................................................................6

I.    THE PWC DECISION IS AN ARBITRATION AWARD FOR PURPOSES OF BOTH THE FAA AND ARTICLE 75 OF THE NEW YORK CIVIL PRACTICE LAW AND RULES ..................................................................................................6

II.    DEFENDANTS WAIVED ANY RIGHT TO OPPOSE CONFIRMATION BY FAILING TO MOVE TO VACATE, MODIFY OR CORRECT THE AWARD WITHIN THREE MONTHS ..................................................................................12

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*,
　524 F.3d 1235 (11th Cir. 2008) ...........................................................................................8

*Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*,
　No. 93 Civ. 4230, 1994 WL 176981 (S.D.N.Y. May 6, 1994) .................................................10

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
　741 F. Supp. 388 (S.D.N.Y. 1989) .........................................................................................10

*Campeau Corp. v. May Dep't Stores Co.*,
　723 F. Supp. 224 (S.D.N.Y. 1989) .........................................................................................10

*Cargill Inc. v. Bunge Foods, Ltd.*,
　762 N.Y.S.2d 53 (1st Dep't 2003) ................................................................................... 10-11

*Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135*
　*v. Jefferson Trucking Co.*,
　628 F.2d 1023 (7th Cir. 1980), *cert. denied*,
　449 U.S. 1125 (1981) ...........................................................................................................12

*Chris O'Connell, Inc. v. Beacon Looms, Inc.*,
　652 N.Y.S.2d 24 (1st Dep't 1997) ..................................................................................... 7-8

*Cullen v. Paine, Webber, Jackson & Curtis, Inc.*,
　863 F.2d 851 (11th Cir.), *cert. denied*,
　490 U.S. 1107 (1989) ...........................................................................................................12

*Florasynth, Inc. v. Pickholz*,
　750 F.2d 171 (2d Cir. 1984) ............................................................................................12, 13

*Forms, Inc. v. American Standard, Inc.*,
　550 F. Supp. 556 (E.D. Pa. 1982) .........................................................................................10

*Frydman v. Cosmair, Inc.*,
　No. 94 Civ. 3772, 1995 WL 404841 (S.D.N.Y. July 6, 1995) ...................................................8

*General Drivers, Warehouseman & Helpers, Local Union No. 89*
　*v. Riss & Co.*,
　327 U.S. 517 (1963) ................................................................................................................7

*Gestetner Holdings, PLC v. Nashua Corp.*,
　784 F. Supp. 78 (S.D.N.Y. 1992) ...........................................................................................10

**PAGE(S)**

*Hartford Fire Ins. Co. v. Evergreen Org., Inc.*,
    410 F. Supp. 2d 180 (S.D.N.Y. 2006)............................................................................. 13-14

*In re Allegiance Telecom, Inc.*,
    356 B.R. 93 (Bankr. S.D.N.Y. 2006) ................................................................................ 9-10

*IBEW, Local Union No. 969*
    *v. Babcock & Wilcox*,
    826 F.2d 962 (10th Cir. 1987) ...........................................................................................12, 15

*International Longshoremen's Ass'n, AFL CIO v.*
    *Hellenic Lines, Ltd.*,
    549 F. Supp. 435 (S.D.N.Y. 1982)...........................................................................................7

*Kim v. Transtar Metals, Inc.*,
    726 N.Y.S.2d 87 (1st Dep't 2001) ........................................................................................11

*Luxottica Grp., S.p.A. v Bausch & Lomb Inc.*,
    160 F. Supp. 2d 552 (S.D.N.Y. 2001)...................................................................................11

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
    858 F.2d 825 (2d Cir. 1988)...................................................................................................6

*Mencher v. B. & S. Abeles & Kahn*,
    84 N.Y.S.2d 718 (1st Dep't 1948).........................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth, Inc.*,
    473 U.S. 614 (1985).............................................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................................................10

*Omni Tech Corp. v. MPC Solutions Sales, LLC*,
    432 F.3d 797 (7th Cir. 2005) .................................................................................................9

*Penn Cent. Corp. v. Consolidated Rail Corp.*,
    436 N.E.2d 512 (N.Y. 1982)................................................................................................11

*Railworks Corp. v. Villafane Elec. Corp.*,
    788 N.Y.S.2d 834 (Sup. Ct. N.Y. Co. 2004) ........................................................................8

*Roca v. Sotheby's, Inc.*,
    No. 94 CV 0966, 1995 WL 362499 (E.D.N.Y. June 12, 1995).......................................12, 13

*Salt Lake Tribune Publ'g Co. v. Management Planning, Inc.*,
    390 F.3d 684 (10th Cir. 2004) ...............................................................................................7

**PAGE(S)**

*Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*,
   857 F.2d 1235 (8th Cir. 1988) ..................................................................................12

*Service Empls. Int'l Union, Local No. 36, AFL-CIO
   v. Office Ctr. Servs., Inc.*,
   670 F.2d 404 (3d Cir. 1982)......................................................................................12

*Sheet Metal Workers' Int'l Ass'n, Local No. 252
   v. Standard Sheet Metal, Inc.*,
   699 F.2d 481 (9th Cir. 1983) ....................................................................................12

*Shockley v. Vermont St. Colls.*,
   793 F.2d 478 (2d Cir. 1986)......................................................................................13

*Talegen Holdings, Inc. v. Fremont Gen. Corp.*,
   No. 98 Civ. 0366, 1998 WL 513066 (S.D.N.Y. Aug. 19, 1998) ..............................10

*Taylor v. Nelson*,
   788 F.2d 220 (4th Cir. 1986) ...............................................................................12, 14

*Vertner v. TAC Ams., Inc.*,
   No. C07-0385 RSL, 2007 WL 2495559 (W.D. Wash. Aug. 30, 2007)................7, 10

**STATUTES & OTHER AUTHORITIES:**

9 U.S.C.:
   § 9.............................................................................................................................12
   § 12...........................................................................................................................12

N.Y. C.P.L.R. 7601 (McKinney 1998 & Supp. 2008)............................................................10, 11

Plaintiff Unarco Material Handling, Inc. ("Unarco") respectfully submits this memorandum of law, at the direction of the Court, in further support of its motion, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 6, 9 (the "FAA") and Sections 7601 and 7510 of the New York Civil Practice Law and Rules ("CPLR"), to confirm an arbitration award issued by PricewaterhouseCoopers LLP ("PwC"), dated February 12, 2008 (the "PwC Decision").

### PRELIMINARY STATEMENT

Defendants have failed to honor their unambiguous obligations under a Stock Purchase Agreement, dated March 9, 2007 (the "Agreement"), pursuant to which Plaintiff purchased a subsidiary of the Defendants. Section 2.04 of the Agreement provides that the parties would, if necessary, adjust the purchase price, post-closing, according to a prescribed formula and that, if they were unable to agree on the extent of such adjustment, they would submit any dispute over the adjustment to an accounting firm (PwC) for "***conclusive and binding***" resolution.

The parties were unable to agree on the purchase price adjustment and, in October 2007, they jointly submitted their dispute to PwC. Pursuant to the "Decision of PwC" dated February 12, 2008, PwC resolved the dispute in favor of Plaintiff, effectively awarding Plaintiff approximately $2.95 million, plus interest (the "PwC Decision"). Now, solely on the basis that they disagree with the result, and in direct contravention of their agreement that any decision of PwC would be "conclusive and binding," Defendants seek to relitigate the exact same issues that PwC resolved after giving the parties a full and fair opportunity to make arguments and submit evidence.

By motion dated May 14, 2008, Unarco moved for confirmation of the PwC Decision pursuant to Sections 6 and 9 of the FAA and Sections 7601 and 7510 of the CPLR. Defendants have not yet responded to the Plaintiffs' motion to confirm, but they have asserted a

counterclaim for a declaratory judgment that certain of the issues considered and ruled upon by PwC were not within the scope of the dispute resolution clause pursuant to which the parties submitted their disputes to PwC.

The counterclaim and each of Defendants' affirmative defenses amount to the contention that the PwC Decision should not be confirmed because PwC exceeded the scope of its authority by considering whether certain of Unarco's claims were arbitrable and/or incorrectly interpreted the applicable dispute resolution provision to provide that those claims were arbitrable. Pursuant to Sections 9 and 10 of the FAA, each of these contentions should have been raised by Defendants in a petition or motion to vacate, modify or correct the award, which motion or petition was required to have been served on Plaintiffs within three months of the issuance of the award. In addition, in various correspondence to the Court in connection with the Parties' respective pre-motion letters, Defendants have indicated that they do not believe the PwC Decision is an "arbitration award" within the meaning of the FAA.

At a May 30, 2008 Initial Conference, the Court deferred a decision on the parties' respective requests to file cross-motions for judgment on the pleadings and, instead, ordered the parties to address two threshold issues, (1) whether the PwC Decision is an "arbitration award" and (2) whether Defendants, by virtue of having failed to move to vacate, modify or correct the PwC Decision within ninety days of the date on which it was issued, have waived any objections to Plaintiff's motion to confirm. As set forth below, the PwC Decision is, undeniably, an "arbitration award," and Defendants have waived their objections to Plaintiff's motion to confirm.

As to the first issue, Defendants' sole basis for arguing that the PwC Decision is not an "arbitration award" is that the arbitration provision in the underlying agreement provides that PwC "will act as an expert and not as an arbitrator in conducting its analysis." However, it

is irrefutable, under decisions in the Second Circuit and various New York state courts, that the nomenclature used to describe the type of alternative dispute resolution proceeding or the appointed decision-maker does not decide the issue. What is dispositive is whether it is clear from the parties' agreement that they intended to submit their dispute to a specified third party for binding resolution. No good faith argument can be made that this is not the case here and Defendants' argument ignores the prevailing law. Moreover, multiple decisions in this Court and elsewhere have held that virtually identical provisions in the exact same context constitute "arbitration" provisions that are subject to enforcement under the FAA.

As to the second issue, it is well-settled that a motion or petition to confirm an arbitration award can only be opposed by a motion to vacate, modify or correct the same award. It is also well-settled that, where, as here, a party fails to move to vacate, modify or correct an award within three months of the date the award was issued, that party waives its right to oppose confirmation of the award. The fact that Defendants claim that they do not consider the PwC Decision to be an "arbitration award," and that they filed a timely answer with affirmative defenses to Plaintiffs' breach of contract claims does not avoid waiver of their right to oppose confirmation.

**FACTS**

Pursuant to a Securities Purchase Agreement by and among Unarco (a/k/a "Buyer"), Kingway Inca Clymer Holdings, Inc. ("Kingway" or "Seller") and American Capital Strategies, Ltd. ("American Capital"), dated March 9, 2007 (the "Agreement") (copy attached as Exhibit 1 to the Declaration of Paul Neal In Support of Unarco's Motion to Confirm, dated May

14, 2008 ("Neal Declaration" or "Neal Decl.")) (Dkt. #16),[1] Unarco purchased all of the outstanding equity interests in KIC Holdings, Inc and its subsidiaries (the "Company") from Defendant Kingway. Defendant American Capital guaranteed certain of the obligations of its subsidiary, Kingway, under the Agreement. Neal Decl. ¶ 2.

In accordance with the Agreement, as of the March 30, 2007 closing date, Unarco paid an "Estimated Purchase Price." The Estimated Purchase Price was calculated based upon the Company's financial information available immediately prior to closing, which the parties understood was not necessarily complete in all respects. In order to reconcile the Estimated Purchase Price with the "Actual Purchase Price," *i.e.,* one that is based upon the Company's complete financial information as of the closing date (which could only be known in hindsight) Section 2.04 of the Agreement provides for a "Post-Closing Adjustment," procedure to calculate the Actual Purchase Price, post-closing, and compare it to the Estimated Purchase Price. If the resulting Actual Purchase Price is less than the Estimated Purchase Price, Seller must pay Buyer the difference, and vice versa. Neal Decl. ¶ 3.

Pursuant to Section 2.04 of the Agreement, the Buyer was required to prepare and deliver to the Seller, within sixty days of closing, a "Draft Computation," containing Buyer's determinations of the actual "Cash Amount," "Indebtedness Payoff Amount" and "Net Working Capital Amount" as of the closing date, and its calculation, based, in part, on these inputs, of the "Actual Purchase Price." Neal Decl. ¶ 4. If the Seller disagreed with any aspect of the Draft Computation, the Seller was entitled, within forty-five days after receipt thereof, to deliver an "Objection Notice" to the Buyer setting forth Seller's competing determinations of the actual

---

[1] The Neal Declaration has already been filed in support of Plaintiff's motion to confirm and a courtesy copy has previously been delivered to the Court. So as not to burden the Court with multiple copies of the motion papers, Plaintiffs have not filed or submitted an additional copy of the Neal Declaration.

Cash Amount, Indebtedness Payoff Amount and Net Working Capital Amount as of the closing date, and its competing calculation, based, in part, on those items, of the Actual Purchase Price. *Id.* ¶ 5. If the Buyer and Seller are unable to resolve the "disagreements" between the Draft Computation and the Objection Notice, the Agreement provides they shall jointly retain PwC to issue a "conclusive and binding" determination:

> Buyer and Seller shall jointly retain PricewaterhouseCoopers LLP . . . or such other accounting firm acceptable to the Buyer and Seller (the "Firm") to resolve any remaining disagreements. The Buyer and Seller shall direct the Firm to render a determination within thirty (30) days after its retention and the Buyer, the Seller and their respective agents shall cooperate with the Firm during its engagement. The Firm may consider only those items and amounts in the Draft Computation or Objection Notice which the Buyer and Seller are unable to resolve. In resolving any disputed item, the Firm will act as an expert and not as an arbitrator in conducting its analysis, and may not assign a value to any item greater than the greatest value for such item claimed by either party or less than the smallest value for such item claimed by either party. The Firm's determination shall be based solely on the written submissions by the Buyer and the seller (*i.e.*, not on independent review) and on the definitions included herein. ***The determination of the Firm shall be conclusive and binding upon the Buyer and the Seller.***

Neal Decl., Ex. 1 at 9.

On or about May 24, 2007, Buyer provided seller with its Draft Computation (Neal Decl., Ex. 2). On or about July 9, 2007, Seller provided Buyer with its Objection Notice (*id.*, Ex. 3). *See* Neal Decl. ¶ 7. There were a number of disagreements between the Draft Computation and the Objection Notice; most importantly with respect to the parties' respective calculations of "Net Working Capital." The disagreement over the calculation of Net Working Capital resulted from a dispute over whether the Company had unrecorded liabilities for sales and use taxes (among others). Neal Decl. ¶¶ 8, 9. Unable to resolve these disagreements, the parties submitted them to an accounting firm for resolution. *Id.* ¶ 10.

By engagement letter dated October 5, 2007, the parties jointly retained PwC (a/k/a the "Firm") to resolve the disagreements between the Draft Computation and the Objection Notice. Neal Decl., Ex. 4. The parties agreed to a schedule for submissions and, according to that schedule, made extensive written submissions to PwC, including expert reports and voluminous materials in support thereof (copies without exhibits attached as Exhibits 5-13 to the Neal Decl.). Neal Decl. ¶ 10.

In the PwC Decision, PwC determined that the Actual Purchase Price was $2,808,691 and that the Estimated Purchase Price was $5,571,379 (Neal Decl., Ex. 14). Pursuant to Section 2.04(b)(ii) of the Agreement,

> [i]f the Actual Purchase Price is less than the Estimated Purchase Price, then within five (5) Business Days after the determination of the Actual Purchase Price, the Seller shall pay to Buyer . . . an amount equal to such difference, plus simple interest . . . at a rate equal to 8% from the Closing Date to the date of Payment, computed on an annual basis using a 360-day year.

*Id.*, Ex. 1 at 10. Thus, based on the PwC Decision, Defendants owe Unarco $2,941,374, (including reimbursement of Unarco's share of PwC's fees) plus interest, and attorney's fees of this action. Defendants have refused to pay Unarco. Neal Decl. ¶¶ 15, 17.

## ARGUMENT

**I.    THE PWC DECISION IS AN ARBITRATION AWARD FOR PURPOSES OF BOTH THE FAA AND ARTICLE 75 OF THE NEW YORK CIVIL PRACTICE LAW AND RULES**

A dispute resolution clause in an agreement constitutes an "arbitration" clause for purposes of the FAA, if "the language clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution" and "[i]t is . . . irrelevant that the contract language in question does not employ the word 'arbitration' as such." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988);

-6-

*International Longshoremen's Ass'n, AFL CIO v. Hellenic Lines, Ltd.*, 549 F. Supp. 435, 437 (S.D.N.Y. 1982) ("an award . . . even if not denominated an 'arbitration' award, is enforceable if the award 'is rendered by the parties' chosen instrument for the definitive settlement of grievances under the Agreement'") (*quoting General Drivers, Warehouseman & Helpers, Local Union No. 89 v. Riss & Co.*, 327 U.S. 517, 519 (1963)); *cf. Salt Lake Tribune Publ'g Co. v. Management Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004) ("Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute"); *Vertner v. TAC Ams., Inc.*, No. C07-0385 RSL, 2007 WL 2495559, at *3 n.3 (W.D. Wash. Aug. 30, 2007) (rejecting argument that post-closing adjustment provision was not "arbitration" because "the Merger Agreement does not explicitly identify the dispute resolution procedures as arbitration").

New York law is in accord. For example, in *Mencher v. B. & S. Abeles & Kahn*, 84 N.Y.S.2d 718 (1st Dep't 1948), the Appellate Division, First Department held that whether the parties agreed to "arbitrate" should be determined by whether the parties expressed their intent to conclusively settle their dispute through alternative dispute resolution:

> Use of the terms "arbitration" or "arbitrate" is not vital to the making of a valid agreement of arbitration provided that the court can ascertain from the agreement that it was the intention of the parties . . . that the controversy should be settled by mediation or arbitration. No particular form of words is necessary to the making of such a valid agreement.

*Id.* at 721.

Similarly, in *Chris O'Connell, Inc. v. Beacon Looms, Inc.*, 652 N.Y.S.2d 24 (1st Dep't 1997), the Appellate Division, First Department held that the parties' agreement to "mediate" any disputes was sufficient to indicate their intent to arbitrate for purposes of a motion

to compel arbitration under Article 75 of the CPLR because they also agreed that the result of the mediation would be binding and enforceable.

> Although the parties' agreement employs the word "mediate" rather than "arbitrate", it does provide that "[t]he proceedings shall be conducted as the mediator directs, with written findings", that "such findings are agreed to be enforceable in any court with jurisdiction over the [losing] party", and that "[c]osts of mediation shall be borne by the [losing] party."

*Id.* at 25 (brackets in original); *see also Railworks Corp. v. Villafane Elec. Corp.*, 788 N.Y.S.2d 834, 836 (Sup. Ct. N.Y. Co. 2004) ("'no particular wording is required to constitute a valid, binding arbitration agreement, nor even the inclusion of the words "arbitrate" or "arbitrator"'") (citations omitted).

Indeed, the cases in which courts have found that dispute resolution provisions were not "arbitration" clauses were decided based on the conclusion that the parties had not agreed that the result of the agreed-upon procedure would finally resolve the parties' dispute. For example, in *Advanced Bodycare Solutions, LLC v. Thione International, Inc.*, 524 F.3d 1235 (11th Cir. 2008), the court found that a contract which provided that disputes "shall be submitted to *non-binding* arbitration or mediation" was not enforceable under the FAA because the prescribed procedure did not result in a binding resolution of the parties' dispute. *Id.* at 1238 (emphasis added). Similarly, in *Frydman v. Cosmair, Inc.*, No. 94 Civ. 3772, 1995 WL 404841 (S.D.N.Y. July 6, 1995), the court found that a price appraisal proceeding was not arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards because the appraisal did not resolve the dispute but, rather, merely "provid[ed] the price term for contracting parties," and did not "take[] on the status of a judgment" under French law. *Id.* at *5.

In light of the above, the fact that the SPA provides that PwC shall "act as an expert and not as an arbitrator" is not relevant. It is dispositive (and irrefutable) that, pursuant to

-8-

Section 2.04, the parties agreed to submit post-closing adjustment disputes to a third party for "conclusive and binding" resolution.

Moreover, the Seventh Circuit construed an identical dispute resolution provision to be enforceable under the FAA, notwithstanding the parties' agreement that an accounting firm would "act as experts and not as arbitrators."  *Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797, 798-99 (7th Cir. 2005).  In *Omni Tech*, the parties also agreed that they would refer their post-closing adjustment disputes to an accounting firm that shall "act[] as experts and not as arbitrators," and that the decision of the accounting firm would be "final, conclusive and binding." *Id.* at 798.

In response to a lawsuit filed by one party over their post-closing adjustment dispute, the other party moved for a stay pending arbitration.  The district court denied the motion for a stay, finding that "because the accountants act 'as experts and not as arbitrators,'" the dispute resolution provision was not an arbitration clause. *Id.* at 799.  The Seventh Circuit disagreed and reversed the district court.

> The statement that PricewaterhouseCoopers will act as an expert and not as an arbitrator means that it will resolve the dispute as accountants do – by examining the corporate books and applying normal accounting principles . . . rather than by entertaining arguments from lawyers and listening to testimony.  It does not imply that the whole section of the contract committing resolution to an independent private party is hortatory.  Thus the provision for the "final conclusive and binding" resolution of this dispute by someone other than a federal judge must be honored.

*Id.*

In addition, several decisions in this Court and in other federal courts have routinely treated virtually identical post-closing adjustment dispute resolution provisions as "arbitration" clauses for purposes of enforcement under the FAA.  *See In re Allegiance Telecom,*

*Inc.*, 356 B.R. 93 (Bankr. S.D.N.Y. 2006) (granting stay of adversary proceeding and compelling post-closing adjustment arbitration before accounting firm); *Talegen Holdings, Inc. v. Fremont Gen. Corp.*, No. 98 Civ. 0366, 1998 WL 513066 (S.D.N.Y. Aug. 19, 1998) (granting motion to compel arbitration of post-closing adjustment dispute before accounting firm); *Gestetner Holdings, PLC v. Nashua Corp.*, 784 F. Supp. 78 (S.D.N.Y. 1992) (same); *Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*, No. 93 Civ. 4230, 1994 WL 176981 (S.D.N.Y. May 6, 1994) (same); *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388 (S.D.N.Y. 1989) (same); *Campeau Corp. v. May Dep't Stores Co.*, 723 F. Supp. 224 (S.D.N.Y. 1989) (same); *Vertner*, 2007 WL 2495559 (same); *Forms, Inc. v. American Standard, Inc.*, 550 F. Supp. 556 (E.D. Pa. 1982) (same). Although none of the provisions at issue in the cases cited immediately above contained the "expert not arbitrator" language, that distinction elevates form over substance. Regardless of the specific language used, in each case, the provision in question similarly expressed the parties' intent to submit their dispute to a third-party for final and conclusive resolution; the hallmark, under federal and New York State law, of an arbitration agreement for purposes of the FAA and Article 75 of the CPLR.[2]

In addition to being enforceable under the FAA and under Article 75 of the CPLR, the PwC Decision is enforceable pursuant to Section 7601 of the New York Civil Practice Law and Rules entitled, "Special proceeding to enforce agreement that issue or controversy be determined by a person named or to be selected." N.Y. C.P.L.R. 7601 (McKinney 1998 & Supp. 2008); *Cargill Inc. v. Bunge Foods, Ltd.*, 762 N.Y.S.2d 53, 54 (1st Dep't 2003) (affirming order

---

[2] The Supreme Court has repeatedly indicated "'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,'" such that although "as with any other contract, the parties' intentions control . . . those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

pursuant to Section 7601 directing parties to submit post-closing adjustment dispute to accountants); *Luxottica Grp., S.p.A. v Bausch & Lomb Inc.*, 160 F. Supp. 2d 552, 556 (S.D.N.Y. 2001) (granting motion to compel arbitration of post-closing adjustment dispute before accounting firm). Under Section 7601, a court "may enforce such an agreement as if it were an arbitration agreement, in which case the proceeding shall be conducted as if brought under article seventy-five." N.Y. C.P.L.R. 7601.

In *Penn Central Corp. v. Consolidated Rail Corp.*, 436 N.E.2d 512 (N.Y. 1982), the New York Court of Appeals held that an "appraisal award" should be confirmed pursuant to a special proceeding under Section 7510 of the CPLR, notwithstanding that Section 7601 does provide an express confirmation mechanism. *Id.* at 517-18. There, the parties agreed upon an appraisal which "resolve[d] the entire dispute between the parties." *Id.* at 516. On this basis the court held that

> when, as here, the only dispute between the parties concerns a question of valuation which they have agreed to submit to a panel of appraisers for a nonjudicial and expeditious determination there is no reason why the award should not be confirmed in a special proceeding and the matter finally resolved as the parties obviously intended when they made the agreement.

*Id.* at 518.

Both this Court and the New York State courts have recognized that post-closing adjustment dispute resolution provisions almost identical to Section 2.04 here are enforceable under Section 7601. *Luxottica*, 160 F. Supp. 2d at 556; *Cargill*, 762 N.Y.S.2d at 54; *see also Kim v. Transtar Metals, Inc.*, 726 N.Y.S.2d 87, 88 (1st Dep't 2001). Accordingly, even if Defendants' were correct that Section 2.04 is not an "arbitration clause," and they are not, the PwC Decision still is enforceable against them.

## II. DEFENDANTS WAIVED ANY RIGHT TO OPPOSE CONFIRMATION BY FAILING TO MOVE TO VACATE, MODIFY OR CORRECT THE AWARD WITHIN THREE MONTHS

Under Section 9 the FAA, a district court "***must grant***" an order confirming an arbitration award "***unless*** the award is vacated, modified or corrected as prescribed in [S]ections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). According to Section 12 of the FAA, a "notice of a motion to vacate, modify, or correct an award must be served upon the adverse party . . . within three months after the award is filed or delivered." 9 U.S.C. § 12. According to the law of this Circuit, "[a] party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, ***even when raised as a defense to a motion to confirm.***" *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (emphasis added); *see also Roca v. Sotheby's, Inc.*, No. 94 CV 0966, 1995 WL 362499, at **3-4 (E.D.N.Y. June 12, 1995).[3] The underlying arbitration award was delivered on February 18, 2008 and, accordingly, Defendants' time to move to vacate, modify or correct the award has now expired.

Defendants have asserted a counterclaim for a declaratory judgment that the Sales Tax and Vacation Accrual Claims were not within the scope of the post-closing adjustment

---

[3]  *See also Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) (adopting "the rule embraced by the Second Circuit in *Florasynth* . . . that once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm"); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir.), *cert. denied*, 490 U.S. 1107 (1989); *Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*, 857 F.2d 1235, 1237 (8th Cir. 1988) ("The authorities agree that a party may not assert a defense to a motion to confirm that the party could have raised in a timely motion to vacate, modify, or correct the award"); *IBEW, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962, 966 (10th Cir. 1987) ("[t]he affirmative defenses asserted by [defendant] could have been raised in a timely action to vacate the . . . award. [Defendant] did not make such a challenge to the validity of the award, and therefore is barred from asserting those defenses in the action . . . to gain confirmation and enforcement of the arbitration award"); *Sheet Metal Workers' Int'l Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir. 1983); *Service Empls. Int'l Union, Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 412 (3d Cir. 1982) ("We agree with the Seventh Circuit that if a defendant has important defenses to an arbitration award he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding"); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025-1028 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125 (1981).

dispute resolution process set forth in Section 2.04 of the Agreement. This counterclaim and each of Defendants' affirmative defenses amount to the contention that the PwC Decision should not be confirmed because PwC (1) exceeded the scope of its authority by considering whether certain claims made by Unarco were arbitrable, and/or (2) incorrectly interpreted the Agreement to provide that those claims were arbitrable. Each of these contentions could have been made in the form of a motion to vacate, modify or correct the PwC Decision. Because Defendants failed to bring such a motion, they have waived their right to assert these defenses in opposition to Plaintiffs' motion to confirm. *Florasynth,* 750 F.2d at 175. The fact that these "defenses" were raised in a timely answer to Plaintiffs' breach of contract complaint, does not alter the analysis. *Id.*; *Sotheby's*, 1995 WL 362499, at *4.

Defendants' claim that they do not consider the PwC Decision to be an arbitration award does not excuse their failure to timely move to vacate, modify or correct the PwC Decision. First, Defendants are not entitled to benefit from being wrong about the nature of the award, especially where, as here, the law is clear and unambiguous. Under both federal law and New York State law, the contention that the PwC Decision is not an arbitration award borders on frivolous. If Defendants chose to gamble their right to oppose confirmation of the award on the validity of this argument or to ignore the law, they did so at their own peril. *See Hartford Fire Ins. Co. v. Evergreen Org., Inc.*, 410 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2006); *see also Shockley v. Vermont St. Colls.*, 793 F.2d 478, 482 (2d Cir. 1986) (finding plaintiff's Title VII claims time-barred where plaintiff's failure to timely file resulted solely from his ignorance of the law and decision to await the outcome of administrative grievance procedure).

In *Evergreen*, the court found that respondents waived their objections to personal jurisdiction because they failed to respond to an amended petition to compel arbitration. Respondents argued that they did not respond because they believed that the amended petition

was improper under their interpretation of Fed. R. Civ. P. 15(a). 410 F. Supp. 2d at 184. The court denied respondents' motion to vacate the order compelling arbitration, finding that their erroneous interpretation of the law was no excuse: "It was not for respondents high-handedly to 'reject' the new petition based on their unilateral (*and incorrect*) view of what Rule 15(a) required. The proper course was to file an answer or motion raising the issue with the Court." *Id.* at 185 (emphasis added).[4]

Second, even if Defendants did not consider the PwC Decision to be an arbitration award, Defendants were on notice by May 14, 2008 (when Plaintiffs' filed their motion to confirm) that Plaintiffs did consider it to be an arbitration award. At that point, Defendants still had until, at least, May 19 to timely serve a notice of motion to vacate, modify or confirm and thereby preserve their rights. *See, e.g., id.* ("in view of the fact that [respondents] knew of the amended petition and deliberately refused to respond to it," they waived any objection). Even if Defendants were concerned that filing such a motion might compromise their ability to argue that the PwC Decision is not an arbitration award, they could have filed a timely motion to vacate, modify or correct the award with an express reservation of rights. *See*, *e.g., id.* (rejecting argument that failure to file responsive pleading should be excused because of perceived defect in the petition: "[t]he proper course was to file an answer or motion raising the issue with the Court").

Third, the contention that the PwC Decision is not an "arbitration award" is a defense Defendants could have and should have raised in a petition or motion to vacate, modify

---

[4] If a party could avoid the effect of the statute of limitations simply by asserting that it did not believe the award was enforceable under the FAA, the three month statute of limitations period would be rendered meaningless. *See Taylor*, 788 F.2d at 225 n.2 ("We note that if a party opposing confirmation were always permitted to seek a vacatur in opposition to a petition to confirm, the three-month limit would have little practical effect").

or correct the award. *See, e.g., IBEW*, 826 F.2d at 966 (holding that defendant's affirmative defense in opposition to motion to confirm an arbitration award under the LMRA, that award "was not an arbitration award," "could have been raised in a timely action to vacate the . . . award," pursuant to a Colorado arbitration statute and thus, defendant was "barred from asserting [that] defense in . . . an action . . . to gain confirmation and enforcement of the arbitration award").

## CONCLUSION

For the reasons set forth above, the PwC Decision is an arbitration award that is enforceable under the FAA and/or Article 75 of the CPLR. Accordingly, Plaintiff's motion to confirm should be granted. Further, as a result of Defendants' failure to timely move to vacate, modify or correct the award, they have waived their right to do so and, thereby, to oppose confirmation of the award under the Second Circuit's ruling in *Florasynth, Inc. v. Pickholz*. Because confirmation of the PwC Decision necessarily moots Defendants' counterclaim and establishes Defendants' liability on Plaintiff's breach of contract and guarantee claims, Defendants' counterclaim should be dismissed and judgment should be granted on Plaintiff's claims.

Dated:   New York, New York
         June 18, 2008

                                       CADWALADER, WICKERSHAM & TAFT LLP

                                       By:  /s/ Howard R. Hawkins, Jr.
                                           Howard R. Hawkins, Jr. (HH-2787)
                                           Joshua R. Weiss (JW-9959)

                                       One World Financial Center
                                     New York, NY 10281
                                     212.504.6000(t)
                                     212.504.6666(f)
                                     howard.hawkins@cwt.com
                                     joshua.weiss@cwt.com

                                     *Attorneys for Plaintiff Unarco Material Handling, Inc.*