UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNARCO MATERIAL HANDLING, INC.,

Plaintiff,

- against -

KINGWAY INCA CLYMER HOLDINGS, INC. and AMERICAN CAPITAL STRATEGIES, Ltd.,

Defendants.

Case No. 08 CV 2394 (VM)

**Filed Electronically**

**DEFENDANTS' INITIAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM**

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

July 9, 2008

*Attorneys for defendants Kingway Inca Clymer Holdings, Inc. and American Capital, Ltd. (f/k/a American Capital Strategies, Ltd.)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 5

I. **SECTION 2.04 DOES NOT CONTAIN AN ARBITRATION CLAUSE AND PWC DID NOT ISSUE AN ARBITRATION AWARD** ........ 5

A. Section 2.04(a) is Not an Arbitration Clause because the Parties Never Intended to Arbitrate Post-Closing Adjustment Disputes ........ 5

B. The PwC Report is Not an Arbitration Award Because It Only Contains Factual Findings and Does Not Grant Affirmative Relief ........ 10

II. **EVEN IF SECTION 2.04 CONTAINS AN ARBITRATION CLAUSE, DEFENDANTS HAVE PRESERVED THEIR RIGHTS TO OPPOSE CONFIRMATION BY TIMELY ASSERTING THEIR OBJECTIONS** ........ 12

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*,
524 F.3d 1235 (11th Cir. 2008) .......... 10-11

*Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*,
No. 93 Civ. 4230, 1994 WL 176981 (S.D.N.Y. May 6, 1994) .......... 8

*AT&T Technologies, Inc. v. Commc'ns Workers of America*,
475 U.S. 643 (1986) .......... 5

*Beal Sav. Bank v. Sommer*,
865 N.E.2d 1210, 1213 (N.Y. 2007) .......... 7

*Bor Corp. v. ADT Automotive Inc.*,
No. 96 Civ. 1019, 1996 U.S. Dist. LEXIS 17572 (S.D.N.Y. Nov. 27, 1996) .. 6, 7 & n.6, 8

*CAE Industries Ltd. v. Aerospace Holdings Co.*,
741 F. Supp. 388 (S.D.N.Y. 1989) .......... 8 n.8

*Campeau Corp. v. May Dep't Stores Co.*,
723 F. Supp. 224 (S.D.N.Y. 1989) .......... 6, 8 n.8

*Chevron U.S.A., Inc. v. Consolidated Edison Co. of New York, Inc.*,
872 F.2d 534 (2d Cir. 1989) .......... 6

*Concourse Village, Inc. v. Local 32E, Serv. Employees Int'l Union*,
822 F.2d 302 (2d Cir. 1987) .......... 5

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002) .......... 5, 6

*Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v. Torino Jewelers, Ltd.*,
844 N.Y.S.2d 242 (1st Dep't 2007) .......... 6

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) .......... 10, 13-14

*Forms, Inc. v. American Standard, Inc.*,
550 F. Supp. 556 (E.D. Pa. 1982) .......... 8 n.8

*Friedland v. Friedland*,
148 N.Y.S.2d 328 (1st Dep't 1956) .......... 11

                                                                     Page(s)

*Fruehauf v. Fruehauf Prod. Co.*,
No. 07-11767-BC, 2008 U.S. Dist. LEXIS 14072 (E.D. Mich. Feb. 26, 2008) ............... 12

*Frydman v. Cosmair, Inc.*,
94 Civ. 3772, 1995 WL 404841 (S.D.N.Y. July 6, 1995) ............................................. 10

*Gestetner Holdings, PLC. v. Nashua Corp.*,
784 F. Supp. 78 (S.D.N.Y. 1992)................................................................................ 8 n.8

*Hawknet Ltd. v. Overseas Shipping Agencies*
2008 WL 1944817 (S.D.N.Y. Apr. 29, 2008)............................................................... 14

*In re Allegiance Telecom, Inc.*,
356 B.R. 93 (Bankr. S.D.N.Y. 2006)..................................................... 7, 8, 9 n.9

*In the Matter of Delmar Box. Co.*,
127 N.E.2d 808 (N.Y. 1955)......................................................................................... 11

*In the Matter of District 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*,
226 N.Y.S.2d 883 (N.Y. Sup. Ct. Kings Co. 1962)....................................................... 11

*In the Matter of Stern*,
33 N.E.2d 689 (N.Y. 1941)........................................................................................... 11

*Local 205, Cmty., Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc.*,
992 F. Supp. 388 (S.D.N.Y. 1998).................................................................................. 6

*Luxottica Group, S.p.A. v. Bausch & Lomb Inc.*,
160 F. Supp. 2d 552 (S.D.N.Y. 2001).............................................................................. 9

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
858 F.2d 825 (2d Cir. 1988).......................................................................................... 7 n.6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)...................................................................................................... 5-6

*Omni Tech Corp. v. MPC Solutions Sales, LLC*,
432 F.3d 797 (7th Cir. 2005) ....................................................................................... 9 & n.9

*Penn Central Corp. v. Consolidated Rail Corp.*,
436 N.E.2d 512 (N.Y. 1982)............................................................................................. 9

*Penn Central Corp. v. Consolidated Rail Corp.*,
441 N.Y.S.2d 266 (1st Dep't 1981)................................................................................... 9

                                                                                                                                  Page(s)

*Phillips v. Girdich*,
408 F.3d 124 (2d Cir. 2005)........................................................................................ 14

*Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*,
863 F.2d 647 (9th Cir. 1988) ......................................................................................12-13

*Talegen Holdings, Inc. v. Fremont Gen. Corp.*,
No. 98 Civ. 0366, 1998 WL 513066 (S.D.N.Y. Aug. 19, 1998) ....................................... 8

*Vertner v. TAC Americas, Inc.*,
No. C07-0385RSL, 2007 WL 24955559 (W.D. Wash. Aug. 30, 2007)....................... 9 n.9

**STATUTES**

9 U.S.C. § 9......................................................................................................................... 10

9 U.S.C. § 12....................................................................................................................... 12

N.Y. C.P.L.R. 7506 (McKinney 1998 & Supp. 2008)........................................................... 6 n.5

Defendants Kingway Inca Clymer Holdings, Inc. ("Seller") and American Capital, Ltd. (f/k/a American Capital Strategies, Ltd.) respectfully submit this memorandum in response to plaintiff Unarco Material Handling, Inc.'s ("Buyer") memorandum in further support of its motion to confirm.[1]

## PRELIMINARY STATEMENT

Months after filing a breach of contract claim based on factual findings made by an independent accountant, plaintiff has made a belated and duplicative motion to "confirm" these factual findings. For the first time, plaintiff asserts that these findings are an arbitration award. Plaintiff further asserts that defendants did not timely file a motion to vacate even though defendants timely opposed these factual findings in their affirmative defenses. Both assertions are baseless.

This breach of contract action arises from plaintiff's purchase of KIC Holdings, Inc. and its subsidiaries ("KIC" or the "Company"). Pursuant to the Securities Purchase Agreement, dated March 9, 2007 (the "Agreement"), the parties engaged an accounting firm to "act as an expert and not as an arbitrator" in determining the values of the "Estimated Purchase Price" and "Actual Purchase Price."[2] Seller objected to the firm's consideration of certain claims which could only have been brought as indemnification claims against the escrow account the parties had created upon closing. On February 18, 2008, the firm issued its factual findings regarding the Actual Purchase Price and the Estimated Purchase Price, but did not impose any obligations on the parties (with the exception of imposing the firm's fee payments pursuant to

---

[1] This memorandum addresses only those preliminary issues that the Court ordered the parties to brief. After resolution of these issues and if necessary, defendants will address the arguments raised in plaintiff's initial memorandum in support of its motion to confirm.

[2] Unless defined separately herein, capitalized terms have the same meaning ascribed to them in the Agreement, which is attached to and incorporated into the Complaint as "Exhibit 1."

the Agreement). Because the firm acted outside its scope of retention in considering certain claims, Seller refused to pay the difference between the Estimated Purchase Price and the Actual Purchase Price, $2,762,688.

Plaintiff then filed its complaint alleging that Seller had breached the Agreement by failing to pay Buyer $2,762,688 plus interest and fees. In their answer, filed only fifty-seven days following the issuance of the firm's report on February 18, 2008, defendants objected to the firm's authority to make certain findings and asserted that those findings were not binding on the parties. Defendants also asserted a counterclaim seeking a declaratory judgment that those claims are indemnification claims. Plaintiff replied to defendants' counterclaims and simultaneously filed a motion to confirm an arbitration award, claiming for the first time (and notwithstanding the explicit provision in the Agreement requiring the accountants to act as experts and not as arbitrators) that the post-closing adjustment process conducted by the accounting firm was an "arbitration."

Plaintiff chose to bring this action as a breach of contract action because its claim to the difference between the Estimated Purchase Price and the Actual Purchase Price is derived solely from the Agreement, not from the accountants' report. Because the report is not an arbitration award, plaintiff's motion to confirm should be denied.

Even if the post-closing adjustment provision in the Agreement could be interpreted as an arbitration clause and the report could be construed as an arbitration award – which would be contrary to the parties' intent – defendants have timely filed their objections to the report in their answer. Plaintiff, on the eve of the Case Management Conference, argued that defendants should have reasserted their previously well-pleaded affirmative defenses and

counterclaim in the *form* of a duplicative motion to vacate. There is no support for this illogical proposition, and plaintiff advances none.

**STATEMENT OF FACTS**

Buyer's acquisition of the Company closed on March 30, 2007. As of that date, Buyer was required to pay to Seller, the Estimated Purchase Price less the "Escrow Amount." Buyer was permitted to seek adjustment of the purchase price through the streamlined procedure set forth in Section 2.04(a) of the Agreement. The parties – using the same accounting methods and principles as the Company had used in the past – could quickly and efficiently resolve arithmetic or unintentional errors in the Estimated Purchase Price to arrive at the Actual Purchase Price. Within sixty days of the closing, Buyer was obligated to submit its calculation of the Actual Purchase Price in a "Draft Computation." If Seller disagreed with Buyer's calculation, Seller could submit an "Objection Notice," setting forth its own computation. If the parties were unable to "resolve [their] disagreements as to the Draft Computation and the Objection Notice," then they were to jointly retain an accounting firm (the "Firm"). The Firm's responsibilities were narrowly circumscribed in the Agreement:

> The Firm may consider only those items and amounts in the Draft Computation or Objection Notice which the Buyer and the Seller are unable to resolve. In resolving any disputed item, *the Firm will act as an expert and not as an arbitrator* in conducting its analysis, and may not assign a value to any item greater than the greatest value for such item claimed by either party or less than the smallest value for such item claimed by either party. The Firm's determination shall be based solely on written submissions by the Buyer and the Seller (i.e., not on independent review) and on the definitions included herein. The determination of the Firm shall be conclusive and binding upon the Buyer and the Seller.

(Section 2.04(a)) (emphasis added).

In the Agreement, the Company made several representations and warranties. Pursuant to Sections 11.02 and 11.03, the Buyer had an exclusive remedy of making

indemnification claims for any alleged breaches of the representations and warranties of the Agreement. Any damages arising from an indemnification claim were limited to the amount remaining in the escrow fund, which was the "sole and exclusive source of funds for payment of the indemnification" claims. (Section 11.03(a)).

On May 24, 2007, Buyer provided Seller with its Draft Computation which sought a downward adjustment of over $6,000,000 to the purchase price. Seller provided Buyer with its Objection Notice on July 9, 2007. The parties retained PriceWaterhouseCoopers LLP ("PwC") to act as the expert firm.

In its submissions to PwC, Buyer asserted that Seller should have included several million dollars in sales tax liabilities on KIC's closing balance sheet and that the Actual Purchase Price should have been adjusted accordingly (the "Sales Tax Claim"). Buyer also alleged that KIC, in order to be in conformity with GAAP, should have included an additional liability of $343,639 on its closing balance sheet for employee accrued vacation (the "Vacation Accrual Claim"). Because those claims were actually indemnification claims for breaches of the representations and warranties of the agreement instead of post-closing adjustments and were therefore not reviewable by PwC, Seller objected to PwC's consideration of the Sales Tax Claim and the Vacation Accrual Claim (together, the "Representations and Warranties Claims").[3]

PwC subsequently issued a report (the "PwC Report") and cover letter.[4] PwC stated in the cover letter that its "services did not include the provision of legal advice and PwC [made] no representations regarding questions of legal interpretation." The PwC Report itself

---

[3] Specifically, Seller asserted that the Representations and Warranties Claims alleged breaches of Sections 3.06 and 3.09 of the Agreement.

[4] The PwC Report and the accompanying cover letter are attached to and incorporated into the Complaint as "Exhibit 2." The report is dated February 12, 2008; it was issued to the parties on February 18, 2008.

failed to address Seller's assertion that the Representations and Warranties Claims were only indemnification claims which PwC did not have the authority to consider; made factual findings on those claims; and adjusted the calculation of the Actual Purchase Price. The PwC Report did not impose any payment obligations (although the cover letter imposed fee payments to PwC in accordance with the Agreement).

## ARGUMENT

### I.
### SECTION 2.04 DOES NOT CONTAIN AN ARBITRATION CLAUSE AND PWC DID NOT ISSUE AN ARBITRATION AWARD

As demonstrated below, Section 2.04 does not contain an arbitration clause and the PwC Report does not constitute an arbitral award that may be confirmed under the Federal Arbitration Act ("FAA") or New York law. Accordingly, plaintiff's motion to confirm should be denied.

### A. Section 2.04(a) is Not an Arbitration Clause because the Parties Never Intended to Arbitrate Post-Closing Adjustment Disputes

Arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986) (citations omitted). *See also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("Arbitration under the [FAA] is a matter of consent, not coercion.") (citations omitted); *Concourse Village, Inc. v. Local 32E, Serv. Employees Int'l Union*, 822 F.2d 302, 304 (2d Cir. 1987) ("Parties to a contract must submit a dispute to arbitration only when they have contracted to do so.").

While it is true that there exists a "liberal federal policy favoring arbitration agreements, …[the FAA] is at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

614, 625 (1985). It is the intent of the parties, and not the federal presumption favoring arbitration, that governs whether the parties agreed to submit their disputes to arbitration:

> While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the *plain text* of the contract, simply because the policy favoring arbitration is implicated.

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. at 294 (citations omitted) (emphasis added). *See also Chevron U.S.A., Inc. v. Consolidated Edison Co. of New York, Inc.*, 872 F.2d 534 (2d Cir. 1989) (notwithstanding the federal presumption favoring arbitration, the unambiguous terms of the agreement demonstrated that the parties did not intend to arbitrate the dispute). New York law is no different. *See Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v. Torino Jewelers, Ltd.*, 844 N.Y.S.2d 242, 244 (1st Dep't 2007) (denying motion to compel arbitration where parties' contract did not evidence an "unequivocal intent to arbitrate the relevant dispute").[5]

In determining whether parties to an agreement intend to arbitrate a dispute, courts apply normal rules of contract interpretation. *See Local 205, Cmty., Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc.*, 992 F. Supp. 388, 392 (S.D.N.Y. 1998); *Bor Corp. v. ADT Automotive Inc.*, No. 96 Civ. 1019, 1996 U.S. Dist. LEXIS 17572, at *15 (S.D.N.Y. Nov. 27, 1996). The question of whether parties agreed to arbitrate a certain dispute "is fact-oriented and precedent [is] of relatively little value." *Campeau Corp. v. May Dep't Stores Co.*, 723 F. Supp. 224, 227 (S.D.N.Y. 1989).

---

[5] New York law is even more stringent in its interpretation of arbitration clauses than federal law. Under New York law, formal procedural requirements generally govern arbitrations, none of which were present here. For example, arbitrators must generally take a formal oath and they must appoint a time and a place for a hearing. *See* N.Y. C.P.L.R. 7506 (a) and (b) (McKinney 1998 & Supp. 2008).

The plain terms of Section 2.04(a) demonstrate Buyer and Seller's explicit intent not to arbitrate post-closing adjustment disputes. It reads in part, "In resolving any disputed item, *the Firm will act as an expert and not as an arbitrator* in conducting its analysis." (Section 2.04(a)) (emphasis added). This phrase means exactly what it says: PwC accountants were not to act as arbitrators and were therefore not to conduct an "arbitration." Interpreting Section 2.04(a) as an arbitration clause would not only violate the basic principle of contract law that contract terms should be given their plain and natural meaning, but it would also render the clause "not as an arbitrator" entirely meaningless. *See In re Allegiance Telecom, Inc.*, 356 B.R. 93, 99 (Bankr. S.D.N.Y. 2006) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing") (citations omitted); *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("A reading of [a] contract should not render any portion meaningless.").[6]

*Bor Corp. v. ADT Automotive Inc.*, No. 96 Civ. 1019, 1996 U.S. Dist. LEXIS 17572 (S.D.N.Y. Nov. 27, 1996), is illustrative. There, sellers sought to compel arbitration over the post-closing adjustment to the purchase price. *Id.*, at *2-4. Pursuant to the Purchase Agreement, "the determination … of Operating Income … [was to] be verified by Ernst & Young or another 'Big Six' accounting firm mutually acceptable [to the parties]." *Id.*, at *3. The firm's "verification …[was to] be conclusive and binding on the parties." *Id.* The court held that the parties had not agreed to arbitrate:

---

[6] Although the Second Circuit in *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988), found that an "arbitration" clause does not have to employ the word "arbitration," that case did not address the situation here where the word "arbitration" is explicitly rejected. *See also Bor Corp*, 1996 U.S. Dist. LEXIS, at *10 (when parties "are sophisticated business entities, [i]f they wanted arbitration, they would have used the term or a derivative thereof").

> The accounting firm was to determine the adjusted purchase price based upon its independent examination of the financial statements presented by Sellers to Buyer prior to the closing. It would find either that Plaintiffs' representations were accurate as to the Adjusted Operating Income and no adjustments should be made, or that the Adjusted Operating Income should be another number, in which the Purchase Price would automatically be adjusted according to the firm's findings. *Under the terms of the Purchase Agreement, the accounting firm would not function as an arbitrator. Thus, §§ 2.6.2-2.6.4 did not constitute a binding agreement to arbitrate.*

*Id.*, at *20-21 (emphasis added). As in *Bor Corp*, despite Buyer and Seller's "clear intent to have an accounting firm … independently … determine adjustments," the post-closing adjustment process conducted by PwC was not an "arbitration" and, under the explicit terms of the Agreement, PwC was not to function as an arbitrator. *Id.*, at *18.[7]

Plaintiff relies on cases involving post-closing adjustment clauses that, unlike Section 2.04(a) of the Agreement, did not disavow "arbitration" as the parties' chosen dispute resolution mechanism for post-closing adjustments. *See, e.g., In re Allegiance Telecom*, 356 B.R. 93; *Talegen Holdings, Inc. v. Fremont Gen. Corp.*, No. 98 Civ. 0366, 1998 WL 513066 (S.D.N.Y. Aug. 19, 1998); *Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*, No. 93 Civ. 4230, 1994 WL 176981 (S.D.N.Y. May 6, 1994).[8]

---

[7] That the purchase agreement in *Bor Corp*. required the accounting firm to become involved before, not after, the parties submitted purchase price adjustments does not weaken its applicability. Under virtually identical language to that used here, the *Bor Corp*. court found that the parties did not intend to arbitrate.

[8] Moreover, in several of the cases cited by plaintiff, the parties did not dispute that the clauses in question were arbitration clauses governed by the FAA. *See Gestetner Holdings, PLC. v. Nashua Corp.*, 784 F. Supp. 78, 80 (S.D.N.Y. 1992) ("Both parties agree that the Petition is governed by the [FAA]"); *Campeau Corp.*, 723 F. Supp. at 227 n.2 (plaintiff, who opposed defendant's motion to stay an action pending arbitration, "does not question the applicability of the [FAA]"); *CAE Industries Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388, 391 (S.D.N.Y. 1989) ("defendants do not deny the making of the agreement to arbitrate"); *Forms, Inc. v. American Standard, Inc.*, 550 F. Supp. 556 (E.D. Pa. 1982) (parties did not dispute whether post-closing adjustment clause was an arbitration clause but merely whether a party had waived its right to arbitration under the clause).

In the two cases cited by plaintiff where the post-closing adjustment clause contained language requiring the accountants to "act as experts and not as arbitrators," both courts specifically declined to rule on whether the clauses constituted arbitration clauses. *See Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797, 801-01 (7th Cir. 2005) (ordering the parties to comply with the post-closing adjustment process but declining to decide the issue of whether the clause was an arbitration clause)[9]; *Luxottica Group, S.p.A. v. Bausch & Lomb Inc.*, 160 F. Supp. 2d 552, 556 (S.D.N.Y. 2001) (same).

Plaintiff's reliance on *Penn Central Corp. v. Consolidated Rail Corp.*, 436 N.E.2d 512 (N.Y. 1982), is also misplaced. In *Penn Central*, the parties agreed to engage a panel of appraisers to determine the allocation of proceeds from the sale. *Id.* at 514. In interpreting the "*plain meaning* of the [parties'] agreement," the Court of Appeals and the Appellate Division held that the parties had agreed to arbitrate their dispute. *Id.* at 516; *Penn Central Corp. v. Consolidated Rail Corp.*, 441 N.Y.S.2d 266, 270 (1st Dep't 1981) (emphasis added). Among other things, the court noted that the parties referred to the appraisal as an "arbitration" in their instructions to the escrow agent. *Penn Central*, 441 N.Y.S.2d at 269. Here, the "plain meaning" of Section 2.04(a) is equally clear. The parties rejected "arbitration" as the their chosen form of dispute resolution.

---

9 Plaintiff's statement that "the Seventh Circuit construed an identical dispute resolution provision to be enforceable under the FAA," is incorrect. (Pl. Br. at 9). Several courts have made this error in interpreting *Omni Tech*. *See, e.g.*, *In re Allegiance Telecom, Inc.*, 356 B.R. at 111; *Vertner v. TAC Americas, Inc.*, No. C07-0385RSL, 2007 WL 24955559, at *3 n.3 (W.D. Wash. Aug. 30, 2007). The *Omni* court carefully noted that it had jurisdiction under the FAA, not because the clause at issue was an arbitration clause, but rather because it heard the case on appeal pursuant to 9 U.S.C. § 16(a)(1)(A) since the district court had denied a motion for a stay under 9 U.S.C. § 3. *Omni Tech*, 432 F.3d at 799.

**B. The PwC Report is Not an Arbitration Award Because It Only Contains Factual Findings and Does Not Grant Affirmative Relief**

PwC's Report itself confirms that it is not an arbitration award because it only makes factual findings and no affirmative relief is granted. New York and federal courts do not recognize mere factual findings made by a third party as arbitration awards.

Section 9 of the FAA states: "If the parties in their agreement have agreed that a *judgment of the court shall be entered upon the award* made pursuant to the arbitration, and shall specify the court, then … any party to the arbitration may apply to the court … for an order confirming the award …" 9 U.S.C. § 9. (emphasis added). The confirmation of an arbitration award is generally a summary proceeding that converts a final arbitration award into a judgment of the court. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). Mere factual findings by a third party, even if they are "binding and conclusive," do not constitute an arbitration award because they may not be summarily converted into a court judgment under the FAA.

In *Frydman v. Cosmair, Inc.*, 94 Civ. 3772, 1995 WL 404841 (S.D.N.Y. July 6, 1995), a case cited by plaintiff, the court held that a price appraisal did not constitute an arbitration award because, "most importantly, …[it] could never attain the status of a judgment." *Id.*, at *6. The court noted that "[t]he result of an arbitration is a binding, enforceable *judgment*." *Id*. (emphasis added). Similarly, in *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008), another case cited by Plaintiff, the court noted that the "presence of an award does not by itself make a procedure 'arbitration' if the procedures that produce the award bear no resemblance to classic arbitration." *Id.* at 1239 n.3. The court listed factors of "classic arbitration," including:

> (i) an independent arbitrator, (ii) who applies substantive legal standards … (iii) considers evidence and argument … from each

> party, and (iv) renders a decision that purports *to resolve the rights and duties of the parties, typically by awarding damages or equitable relief*.")

*Id.* at 1239 (emphasis added). The court emphasized that "[i]f a dispute resolution procedure does not produce some type of award that can be meaningfully confirmed, modified, or vacated by a court … it is not arbitration within the scope of the FAA." *Id.*

New York law is in accord. An "agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, *upon which judgment may be entered* after judicial confirmation of the arbitration award." *In the Matter of Delmar Box. Co.*, 127 N.E.2d 808, 811 (N.Y. 1955) (emphasis added). In *Friedland v. Friedland*, 148 N.Y.S.2d 328, 331 (1st Dep't 1956), the court refused to grant a party's request for arbitration when the request did not indicate that the so-called arbitration would "grant affirmative legal or equitable relief" and it noted that "[i]f the arbitrators merely find the facts requested, and grant no relief, no judgment can be entered thereon." As such, "[i]t would be fruitless to allow an arbitration." *Id.* *See also In the Matter of Stern*, 33 N.E.2d 689, 689 (N.Y. 1941) (reversing the lower courts' judgments on an award which merely fixed the amount of allowance to be made by a husband to support his wife because, notwithstanding "whatever the parties may have intended," the award did not decide a "justiciable controversy" upon which judgment could be entered); *In the Matter of District 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 226 N.Y.S.2d 883 (N.Y. Sup. Ct. Kings Co. 1962) (same).

Because PwC merely made factual findings and did not grant affirmative relief upon which a court can simply enter judgment, the PwC Report is not an "arbitration award" under either federal or New York law. In the "Summary of Decision," the PwC Report states, "With respect to the dispute regarding the Estimated Purchase Price, the Estimated Purchase Price has been determined to be $5,571,379. … Lastly, it has been determined that the Actual

Purchase Price is $2,808,691." (PwC Report at 3). PwC notably did not (and could not, pursuant to Section 2.04(a)) impose an obligation upon the Seller to pay the Buyer the difference between these two amounts. In its letter accompanying the PwC Report, PwC explicitly stated that its "services did not include the provision of legal advice and PwC [made] no representations regarding questions of legal interpretation."

The required additional step that imposes an obligation on the parties (based on PwC's findings) is found in the Agreement. As plaintiff notes, Section 2.04(b) imposes an obligation on one of the parties to pay the difference between PwC's determinations of the Estimated Purchase Price and the Actual Purchase Price. (Pl. Br. at 6). Plaintiff's recourse is a breach of contract action which it has asserted and which should be litigated.

## II.
## EVEN IF SECTION 2.04 CONTAINS AN ARBITRATION CLAUSE, DEFENDANTS HAVE PRESERVED THEIR RIGHTS TO OPPOSE CONFIRMATION BY TIMELY ASSERTING THEIR OBJECTIONS

Assuming *arguendo* that Section 2.04(a) of the Agreement contains an arbitration clause *and* that the PwC Report constitutes an arbitration award, defendants have not waived their opportunity to oppose confirmation of the award because they asserted their objections and defenses to the award within the 90 day statute of limitations. *See* 9 U.S.C. § 12. A party who asserts its objections to an award in the form of an affirmative defense within the statutory period has preserved its arguments. *See Fruehauf v. Fruehauf Prod. Co.*, No. 07-11767-BC, 2008 U.S. Dist. LEXIS 14072, at *10 (E.D. Mich. Feb. 26, 2008) (holding that defendant had timely asserted its objections to an arbitration award by asserting an affirmative defense in its answer which stated that the arbitration award had been procured by undue means, fraud, or corruption). *C.f. Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 650 (9th Cir. 1988) (interpreting Arizona statute which is similar to 9 U.S.C.

§ 12 and indicating that defenses that are asserted within 90 days can function as a motion to vacate).

Plaintiff initiated this action by seeking to enforce PwC's findings in a complaint alleging a breach of Section 2.04 of the Agreement. (Complaint at ¶ 26). In its answer, filed only 57 days following the issuance of the PwC Report to the parties, defendants asserted an affirmative defense which stated:

> The Representations and Warranties Claims were improperly considered by PwC because they were not post-closing adjustments and were therefore not within PwC's scope of retention. … Therefore, its conclusions as to these claims have no binding effect on the parties.

(Answer at ¶ 42). By asserting this defense, defendants timely preserved their objections to the PwC Report.

Plaintiff cites no cases in support of its proposition that defendants have waived their right to oppose confirmation despite having asserted their objections in affirmative defenses within the statutory period. In fact, defendants' position is consistent with the Second Circuit's holding in *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984), a case relied upon by plaintiff. There, the party opposing the award raised its objections *for the first time* after the 90 day limitations period had passed and only in response to the other party's motion to confirm, which was filed nearly four months after the award was rendered. *Id.* at 173. The *Florasynth* court stated that the key inquiry is whether the prevailing party in an arbitration is put on notice of the opposing party's objections to the award within the 90 day statutory period: "[w]hen a losing party has important defenses to an arbitration award he should raise them promptly." *Id.* at 172. This is so because "parties choose to arbitrate because they want quick and final resolution of their disputes." *Id.* at 177. Because plaintiff has been on notice of defendants'

objections since April 15, 2008 – only 57 days after PwC issued its report – defendants' arguments are not barred by the statute of limitations.

Finally, plaintiff's argument that defendants had five days to move to vacate or modify the PwC Report after plaintiff filed its motion to confirm, is absurd. Plaintiff admits that defendants' affirmative defenses and counterclaims "amount to the contention that the PwC Decision should not be confirmed." (Pl. Br. at 2). In arguing that these same counterclaims and defenses "could have been made in the *form* of a motion to vacate, modify or correct" the PwC Report, plaintiff not only elevates form over substance but also advocates a rule that would result in duplicative pleadings. (Pl. Br. at 13) (emphasis added). *See Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) (courts should "never exalt form over substance"); *Hawknet Ltd. v. Overseas Shipping Agencies*, 2008 WL 1944817, at *3 n.7 (S.D.N.Y. Apr. 29, 2008) (accepting amended verified complaint instead of requiring plaintiffs to vacate attachments and re-plead which would "simply force plaintiffs to file a duplicate action after its initial action is dismissed, [thereby] exalting form over substance").

**CONCLUSION**

For the reasons set forth above, plaintiff's motion to confirm the PwC Report should be denied, or alternatively, defendants should be permitted to oppose confirmation because they have timely asserted their objections.

Dated: New York, New York
July 9, 2008

Respectfully submitted,

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

By: /s/ Scott M. Berman

Scott M. Berman
Jennifer P. Krakowsky
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
sberman@fklaw.com
jkrakowsky@fklaw.com

*Attorneys for defendants Kingway Inca Clymer Holdings, Inc. and American Capital, Ltd. (f/k/a American Capital Strategies, Ltd.)*